JOHN C. ENGLAND, Appellant, v. BURNETT REAL ESTATE AND INVESTMENT COMPANY et al., Respondents.

St. Louis Court of Appeals, March 7, 1899.

**Equity Proceeding:** CANCELLATION OF CONTRACT: FRAUD. In the case at bar plaintiff gave his note, solely, to purchase the property in question; nothing was paid for him on account of the note, and no conveyance of the property made to him; held, that the whole consideration of the note has failed, and that it would be inequitable to permit the holder, in violation of the written agreement upon which it was obtained, to enforce the collection of the note or its collateral securities; and since plaintiff did not acquiesce in defendants' action they were without any right or title to the note sought to be canceled in this proceeding.

*Appeal from the St. Louis City Circuit Court.*—HON. SELDEN P. SPENCER, Judge.

REVERSED AND REMANDED (with directions).

England v. Real Est. & Inv. Co.

Seddon & Blair for appellant.

The court below found that the Burnett Company and the firm of Vrooman & Company were practically one and the same, and that the agreement between the parties on February 15, 1897, was that the Wells avenue property should be conveyed to England and should be held in escrow by the Burnett Company until England should pay his note for $1,895.30, and should then be conveyed by the company to England, but after so finding, it found, as a matter of law, that the payment by the Vroomans and the Burnett Company of $650 to Walz, and the conveyance to him of the house on St. Ferdinand street and the lot on Regal Place constituted the consideration for the note of England for $1,895.30. This was an erroneous conclusion of law. The evidence shows that the note of England was given for the conveyance to him of the Wells avenue property. This was its sole consideration. The written agreement of February 15, 1897, so declares. The defendant seeks to establish that this written instrument did not truly state the agreement, that it should be reformed so that they may plead in defense what they claim to be the real agreement, viz.: That the property should be conveyed, not to England, but to the Burnett Company, by it to be held as security for the note of England for $1,895.30, to be conveyed by it to England, in case he should pay his note, and if he should not, to be sold by the Burnett Company. There is no evidence in this case which would justify the court in reforming the written agreement. State v. Frank, 51 Mo. 98; Tesson v. Ins. Co., 40 Mo. 33; Street v. Owens, 109 Mo. 7.

W. F. Carter and W. F. Smith for respondent.

Complainant's case is without merit and he is not entitled to the favorable consideration of a court of equity, as he failed and neglected to fulfill each and every of his undertak-

ings, while the defendants promptly complied with and fulfilled all of their agreements and undertakings, even though they were made more burdensome by plaintiff's repeated defaults. Plaintiff possessed neither the means nor the credit to warrant his undertakings or to enable him to fulfill them all of which is shown by the record. His knowledge of his inability to fulfill his obligations was tantamount to an intention to not fulfill them. Leedom v. Ward Furn., Stove & Carpet Co., 38 Mo. App. 425, 434. Whether the contract bearing date February 15, 1897, was executed on the day it bears date, as contended by England, or whether it was executed later, as contended by respondents, yet it is conceded by appellant that it was executed and entered into in connection with the note for $1,895.30, bearing same date and the collateral agreement appended to and forming part of the note; and as those two documents grew out of the same transaction and expressly relate to the same subject-matter, they are to be read and construed together; and are also to be construed in the light of the conduct of the parties at the time, and the facts and circumstances surrounding and attending their execution; especially if the two documents construed together are ambiguous; and following a cardinal rule of construction that the intention of the parties must govern, it can not be doubted that it was the intention of the Burnett Company to secure to itself the payment of the note of $1,895.30 made by England to it, which would not have been accomplished by the delivery to it of a deed made to England as grantee.

BOND, J.—This is a proceeding in equity for the cancellation of a contract and the surrender of a note for $1,-895.30, executed in pursuance of said contract, and the surrender of certain collateral notes pledged to secure the above-mentioned note, it being alleged that the contract was procured by fraud and that the note was without consideration. The answer denied the charge of fraud, and averred that the note was given for money borrowed for plaintiff and paid over

by his direction. The reply took issue. Upon the hearing plaintiff's suit was dismissed, wherefore he appealed.

The facts are, that on the fourth of January, 1897, plaintiff agreed to purchase of one Robert R. Hamilton a lot improved with eight three room flats on Wells avenue in this city encumbered by a first and second deed of trust aggregating $6,200. Fifty dollars in cash was paid under this agreement, a note for $2,500, secured by a deed of trust was deposited as collateral, and plaintiff further agreed to convey one hundred and sixty acres of timber land in Arkansas, but he expressly reserved the right to take up said collateral note and substitute therefor $1,500 in cash and his note for $500, due on the first of October, 1897. It was further stipulated that the transaction was to be closed on or about the fifteenth day of February, 1897. The $50 mentioned in this agreement was paid to defendant Vrooman, to whom also the collateral note for $2,500 was delivered. On the fifteenth day of February, 1897, plaintiff being unable to raise the money to take up the collateral note mentioned in said agreement, Vrooman proposed to borrow a sum sufficient for that purpose for plaintiff. In furtherance of this agreement plaintiff executed a note for $2,000, less some deduction to which he was entitled. This note was dated February 15, 1897, and was for the sum of $1,895.30, payable in ninety days to the Burnett Real Estate & Investment Company with eight per cent interest, and was secured by a deposit of the aforesaid $2,500 note as collateral. A contract of even date was executed between plaintiff and the Burnett Real Estate & Investment Company, which recited, among other things, that the money evidenced by said note had been advanced by that corporation to plaintiff "with which to complete the purchase of the following described real estate" (then follows description), and "that the deed for the above described property shall be deposited with the Burnett Real Estate & Investment Company in escrow," who were to collect the rents accruing

on the property and apply the same as a credit on said note. The agreement further set forth the terms and conditions by which the note in question might be partly paid and partly extended. The note itself contains an appended clause signed by the maker which set forth the pledge by him of certain "described personal property" to secure the note. Among other things, a deed to the eastern sixty feet of lot 19 in block No. 2, of Gamble's second subdivision of Rosehill in block 3805 of the city of St. Louis," subject to the incumbrances as shown by the certificate of title, which property is pledged at a valuation of $1,895.30 (which was the property intended to be bought by plaintiff). The purpose of this transaction was to provide the money necessary to procure plaintiff a deed to the same property which he had contracted to buy from R. R. Hamilton from the real owner, one Paul Walz, it having been discovered by plaintiff at that time that said Hamilton was what is termed by real estate dealers "a straw man;" that he had never owned the property in question, nor had any right or interest therein, nor any authority to make a conveyance thereof, but was made a nominal party to the contract in order to obtain an agreement with plaintiff which might serve as a basis upon which the real estate dealers could rely in case of the acquisition of title to the property in themselves affording them a profit of whatever difference might exist between the sum they paid for the property and that which the other party had agreed to pay their "straw man." It was further conclusively shown by the testimony, and so found by the trial judge, that the Burnett Real Estate & Investment Company whose only tangible assets were an equity in two lots estimated to be worth $3,000, was exclusively officered, owned and controlled by the two Vroomans, who as real estate dealers effected these transactions with plaintiff. It further appeared that on January 5, the day after the agreement between plaintiff and the "straw man" provided by the Vroomans, that one of the latter, Claude E. Vrooman,

procured a contract from Paul Walz the real owner of the property for the sale of the same to said C. E. Vrooman for the consideration of the transfer of twenty-five feet of ground on Regal Place and fifty feet on the south side of Ferdinand avenue, the latter incumbered for $750, and for the sum of $650, which sale was to be consummated on the fifteenth of February, 1897. It further appeared that said Vrooman caused said Paul Walz to make a general warranty deed of the property in question to the Burnett Real Estate & Investment Company on February 8, 1897, which was not recorded, however, until February 16, 1897. Although the consideration recited in said deed was $12,000, it was admitted by Vrooman that the real consideration was that recited in the contract for sale between Walz and himself of which the deed of conveyance to the Burnett Real Estate & Investment Company was simply a full performance. It is admitted that the title to the property is now held by an innocent purchaser. The preponderance of the evidence shows that plaintiff at the time he executed his note for $1,895.30 to the Burnett Real Estate & Investment Company had no knowledge that it was then the owner of the property by warranty deed from Walz of date February 8, 1897, and that in ignorance of this fact he gave his note for the sum he had originally agreed to pay to Hamilton the "straw man," upon the promise of the defendants to procure a deed to him from Walz for the money evidenced by his note, and that such deed, when procured, should be deposited in connection with other collateral as a security for his note to the ostensible lender of the money, the Burnett Real Estate & Investment Company. That defendants had no intention of procuring a deed to plaintiff from Walz, according to their promise, is evident from the fact that they had already taken a deed to the property from Walz in the name of the Burnett Real Estate & Investment Company, which the evidence conclusively shows was a mere corporate mask for such transactions of the Vroomans as they desired

to put in the name of a different legal entity.   The conclusion is also irresistible that neither Vrooman nor the Burnett Real Estate & Investment Company advanced Walz anything on account of plaintiff's note for $1,895.30, for it stands admitted that the only consideration which Walz received for his deed to the Burnett Real Estate & Investment Company was the identical consideration which C. E. Vrooman had agreed to give on his own account in his contract to purchase the property for himself made with Walz on the fifth of January, 1897.   It is clear, therefore, that the record wholly fails to sustain the defense set up in the answer that plaintiff's note was given for money advanced thereon and paid "over to the said P. Walz at plaintiff's request."   It is true the two Vroomans undertake to testify to the effect that plaintiff acquiesced in their purchase of the property on their own account as a purchase made for him, but their testimony on this point is outweighed by the clear and positive statement of the plaintiff to the contrary and by the distinct and unequivocal language of the written contract between plaintiff and the Burnett Real Estate & Investment Company, the appended clause of his note, and the tendency of all the facts and circumstances in the record.   Since plaintiff gave his note solely to purchase the property in question, and as nothing was paid for him on account of the note and no conveyance of the property made to him, it is clear that the whole consideration of the note has failed, and that it would be inequitable to permit the holder, in violation of the written agreement upon which it was obtained, to enforce the collection of the note or its collateral securities.   It is difficult to escape the conclusion that defendants for some purpose of their own conducted their transactions with plaintiff from first to last upon a system of double dealing, in furtherance of which they made use of a "straw man" to bind plaintiff to pay a certain sum for the property which he desired them to obtain for him; that immediately thereafter they made a private contract with the

real owner to purchase the property for themselves; that when the deraignment of title exposed the fact that plaintiff had no obligation on the part of the real owner to convey the property, defendants offered to get a conveyance from said owner for the price which plaintiff had agreed to pay their "straw man," and when plaintiff accepted this proposition and gave his note for the money which defendants promised to pay the real owner for a deed conveying the property to plaintiff, they wholly failed to perform their agreement, but bought the property for themselves in pursuance of a previous agreement made on their own behalf with the real owner. This conduct on the part of defendant evinced bad faith and a breach of the agreement upon which they secured plaintiff's note. As the record fails to satisfy us that plaintiff in any way acquiesced in defendants' action, they were clearly without any right or title to the note sought to be canceled in this proceeding. This would be the result of a failure of a strict performance of defendants' agreement with plaintiff even if they were not his agents in the purchase of the property, on the principle that a party who breaks his contract is not entitled to recover as upon a performance. There is cogent evidence in this record showing that defendants were the agents of plaintiff to buy the property. Upon that theory the employment by defendants of a "straw man" to make a pretended sale to plaintiff, and the subsequent acquisition of the title to the property in themselves before the date when plaintiff could require a conveyance from the "straw man," was an effort on the part of defendants to derive illegal profits from their agency, such as has been aptly termed a scheme of fraud and plunder. Pom., Eq. Jur., sec. 959; Euneau v. Rieger, 105 Mo. loc. cit. 676; Story on Agency, sec. 207; Diplock v. Blackhem, 3 Camp. 44. It is not necessary, however, to decide the question as to the agency of the defendants. They are not entitled to enforce plaintiff's note from any standpoint.

RIGHT to note.

The learned circuit judge found most of the facts in accordance with this opinion. His error seems to have been in failing to differentiate the consideration paid by the Vroomans for the obtention of the title in accordance with a binding contract made by themselves with the real owner, and that consideration which they promised plaintiff to pay over to the real owner upon the subsequent execution of his note. The result is that plaintiff is entitled to a decree for the cancellation of his note for $1,895.30 and the surrender to him of all the collateral securities deposited either with the Burnett Real Estate & Investment Company or the Vroomans to secure said note. For this purpose the cause is reversed and remanded with directions to enter such a decree for plaintiff. All concur.